# EXHIBIT 4

# Holland & Knight

701 Fifth Avenue, Suite 4700 | Seattle, WA 98104-7045 | T 206.505.4000 | F 206.505.4099
Holland & Knight LLP | www.hklaw.com

Nathan T. Paine
Nathan.Paine@hklaw.com

October 29, 2025

Robin D. Miller
Stites & Harbison PLLC
100 East RiverCenter Boulevard
Suite 450
Covington, KY 41011
rmiller@stites.com

    **RE: Request for refund of overpaid royalties to Z&Z**

Dear Robin Miller,

  We represent Bath & Body Works ("BBW"). We write concerning the 1999 Agreement executed on December 31, 1999, which was later amended and superseded by the first settlement agreement effective March 20, 2014 ("Settlement Agreement") and amended again with a subsequent settlement agreement effective January 19, 2019 ("Second Settlement Agreement") (the three agreements collectively, the "Agreement"). Under the Agreement, BBW has paid substantial royalties to Zaragoza & Zembrodt, LLC ("Z&Z") on its purchases of certain fragrance diffuser products.

  We send this letter pursuant to the notice provision in the Agreement. However, because you have changed firms, we are also sending a copy directly to Z&Z to ensure receipt.

  To summarize this letter's purpose, the Agreement does not specify a fixed termination date for the royalty payment obligation. Instead, the Agreement provides that the royalty payments shall continue for as long as BBW sells any Product, as the term is defined in the 1999 Agreement. However, pursuant to controlling U.S. Supreme Court precedent, BBW's royalty obligation terminated when Patent No. US 6,236,807 B1 (the "'807 Patent") expired on January 7, 2020. Since then, BBW overpaid $74,266,755 in royalties to which Z&Z was not entitled. With this letter, BBW puts Z&Z on notice that no further royalty payments will be made pursuant to the Agreement. Moreover, BBW hereby requests the return of the $74,266,755 in overpayments plus statutory interest.

  **Please confirm within seven calendar days from the date of this letter whether Z&Z will agree to comply with this request**.

  <u>**The Patents and Material Terms of the Agreement**</u>. Immediately after the execution of the 1999 Agreement, patent application 09/479,637 for a novel fragrance emanation system was

Atlanta | Austin | Birmingham | Boston | Century City | Charlotte | Chattanooga | Chicago | Dallas | Denver | Fort Lauderdale
Houston | Jacksonville | Los Angeles | Miami | Nashville | Newport Beach | New York | Orlando | Philadelphia | Portland
Richmond | San Francisco | Seattle | Stamford | Tallahassee | Tampa | Tysons | Washington, D.C. | West Palm Beach

Robin D. Miller
October 29, 2025
Page 2

filed on January 7, 2000. The patent issued on May 22, 2001 as the '807 Patent, with the inventors identified as BBW's Richard Ruffalo and the members of Z&Z, Anthony Zembrodt and Roberto Zaraboza.[1] The inventors assigned the '807 Patent to BBW.

Then on January 3, 2000, patent application 29/116,413 was filed for the "ornamental design for an electric air freshener." The patent issued on September 5, 2000 as Patent No. D 430,659 (the "'659 Design Patent"). The named inventors on the '659 Design Patent were the same as for the '807 Patent with the addition of BBW's Michael Koulermos. The inventors also assigned the '659 Design Patent to BBW.

While more fully described in the specification and claims, and as depicted in the figures, the '807 Patent teaches the fragrance diffusion system described in the 1999 Agreement's Exhibit B, which is expressly incorporated into the Agreement's definition of Products. The '659 Design Patent protects the ornamental design elements of the Product. Explicitly excluded from the Agreement's definition of Products, and thus not subject to any royalty payments, are fragrance diffuser products with a light bulb, blower, or any other "major technological developments." This exclusion was later confirmed by the parties in their Second Settlement Agreement.

The inventions disclosed in the patents were jointly developed by BBW's employees and Z&Z's members. However, Section 4 of the 1999 Agreement makes clear that BBW owned all rights associated with the patent applications for the '807 Patent and the '659 Design Patent "and any subsequently issued patents relating thereto" as well as any and all intellectual property rights (as more fully and broadly defined in the 1999 Agreement) relating to the patented Products.

The '807 Patent expired on January 7, 2020 and the '659 Design Patent expired on January 3, 2014. Consequently, the inventions disclosed in the '807 Patent and the ornamental design of the '659 Design Patent are now in the public domain.

From 1999 to date, BBW has paid over $200 million in royalties to Z&Z on the patented Products. Clear from the Agreements, the following royalties are paid on the patented Products: $0.0675 per unit of the fragrance dispenser or single bulb fragrance refill and $0.135 per unit of starter kits or two bulb pack of fragrance refills.[2] Pursuant to the Agreement, this basic royalty rate applies in perpetuity so long as BBW continues to sell the patented Products. There are no terms or conditions in the Agreement that affect the royalty rate to cause either an increase or a decrease. Critically, the Agreement does not provide for any change in the royalty rate after the expiration of the '807 Patent or expressly differentiate the portion of the royalties for patent rights versus non-patent rights.

**Analysis of *Brulotte* and *Kimble*.** As established by the U.S. Supreme Court in *Brulotte v. Thys Co.*, 379 U.S. 29 (1964), and reaffirmed in *Kimble v. Marvel Entertainment*, LLC, 135 S. Ct. 2401 (2015), the obligation to pay royalties on products sold under a patent ceases upon the

---

[1] This is how Mr. Zaragoza's name appears on the face of the patents.

[2] Prior to the Settlement Agreement, there was a different royalty structure through the first quarter of 2014. But in the Settlement Agreement, the parties agreed to the current royalty structure and further agreed the royalty payment structure in the 1999 Agreement was "null and void and has no force or effect."

Robin D. Miller
October 29, 2025
Page 3

expiration of the patent. The basis for this rule is rooted in the fundamental principle of U.S. patent law that a patent confers a limited monopoly for a *fixed term*, after which the patented invention enters the public domain and may be freely used by anyone, unencumbered by the former patentee's exclusive rights. Thus, "any attempted reservation or continuation in the patentee or those claiming under him of the patent monopoly, after the patent expires, *whatever the legal device employed*, runs counter to the policy and purpose of the patent laws." *Brulotte.*, 379 U.S. at 31 (emphasis added).

Thus, since *Brulotte,* any agreement requiring royalty payments for the use of a patented invention after the expiration of the patent term is unenforceable no matter the express terms of the agreement. The *Brulotte* court explained that to allow post-expiration royalties would improperly extend the patent monopoly beyond the period authorized by Congress, thereby contravening the policy and purpose of the patent laws. Upon expiration, the invention becomes public property, and "patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful *per se.*" *Brulotte.*, 379 U.S. at 32.

In *Kimble*, the Supreme Court reaffirmed the *per se* rule established in *Brulotte*. In affirming the Ninth Circuit's application of *Brulotte's per se* rule, the Supreme Court succinctly summarized the relevant facts as follows:

> Kimble sued Marvel in 1997 alleging, among other things, patent infringement. The parties ultimately settled that litigation. Their agreement provided that Marvel would purchase Kimble's patent in exchange for a lump sum (of about a half-million dollars) and a *3% royalty on Marvel's future sales of the Web Blaster and similar products. The parties set no end date for royalties*, apparently contemplating that they would continue for as long as kids want to imitate Spider-Man (by doing whatever a spider can).
>
> And then Marvel stumbled across *Brulotte*, the case at the heart of this dispute. In negotiating the settlement, neither side was aware of *Brulotte*. But Marvel must have been pleased to learn of it. *Brulotte* had read the patent laws to prevent a patentee from receiving royalties for sales made after his patent's expiration. *See* 379 U.S. at 32. So the decision's effect was to sunset the settlement's royalty clause. On making that discovery, Marvel sought a declaratory judgment in federal district court confirming that the company could cease paying royalties come 2010—the end of Kimble's patent term. The court approved that relief, holding that *Brulotte* made "the royalty provision . . . unenforceable after the expiration of the Kimble patent." 692 F. Supp. 2d 1156, 1161 (Ariz. 2010).

*Kimble,* 135 S. Ct. at 2406 (emphasis added).

Declining the invitation to overturn *Brulotte*, the *Kimble* court explained the *Brulotte* "decision is simplicity itself to apply. A court need only ask whether a licensing agreement provides royalties for post-expiration use of a patent. If not, no problem; if so, no dice." *Id*. at 2407. The *Kimble* court held that the cut-off date for patent exclusivity is a bright line: once the patent expires, so do the patentee's rights to control the use of the invention, and the right to make,

Robin D. Miller
October 29, 2025
Page 4

use, or sell the article passes to the public. The *Kimble* court also clarified that if a license covers both patent and non-patent rights, royalties may continue post-expiration only if they are clearly tied to non-patent rights. If the agreement does not distinguish between royalties for patent and non-patent rights, or if the royalty is inseparably tied to the patent, the *Brulotte* rule applies, and post-expiration royalties are barred.

Where the royalty agreement does not expressly account for a reduced royalty rate for the post patent expiration term, as is the case with the Agreement here, the royalty is considered inseparably tied to the patent. The Ninth Circuit, in its *Kimble* decision affirmed by the U.S. Supreme Court, articulated the following rule: "a license for inseparable patent and non-patent rights involving royalty payments that extends beyond a patent term is unenforceable for the post-expiration period unless the agreement provides a discount for the non-patent rights from the patent-protected rate." *Kimble v. Marvel Enterp. Inc.*, 727 F.3d 856, 868 (9th Cir. 2013) (*aff'd Kimble*, 576 U.S. at 465) (holding the failure to specify two royalty rates for the pre and post expiration periods of the patent was dispositive in applying the *Brulotte* rule).

Applying this rule to the Agreement, after the '807 Patent expired on January 7, 2020, BBW's obligation to pay royalties on the Products terminated. It is of no consequence that the Agreement provides, "payments to Z&Z provided for under this Agreement continued for as long as [BBW] sells any Product." Clear from *Brulotte* and *Kimble*, such contractual provisions are unenforceable, regardless of the parties' intentions, especially where the Agreement sets forth a single royalty rate for the Products without any discount post expiration of the '807 Patent. *Brulotte* and *Kimble* are controlling and leave no doubt that continued royalty obligations for the Products beyond January 7, 2020 are *per se* unlawful.

For these reasons, BBW will not make any additional royalty payments to Z&Z pursuant to the Agreement's royalty provision.

**Z&Z's Unjust Enrichment**. In light of *Brulotte* and *Kimble*, Z&Z's retention of the $74,266,755 in royalties received since January 7, 2020 is unjust. BBW is entitled to a refund of those overpayments plus statutory interest. *See, e.g., Blank v. Bluemile, Inc.*, 174 N.E.3d 859, 869 (2021) (a claim for unjust enrichment "arises when a party retains money or benefits which, in the interest of justice and equity, belongs to another").

According to BBW's records, the following royalties were paid to Z&Z for the Products each year since the '807 Patent expired on January 7, 2020.

2020 – $12,581,610[3]

2021 – $15,891,137

2022 – $14,938,608

---

[3] BBW paid a total of $12,605,829 in royalties in 2020 with $24,219 paid for the period of January 1, 2020 through January 6, 2020.

Robin D. Miller
October 29, 2025
Page 5

      2023 – $15,012,085

      2024 – $15,843,315

      2025 YTD – $7,352,085

      Total - $74,266,755

BBW requests the immediate return of this overpayment plus statutory interest.[4]

      **Conclusion**. The Agreement requires the parties to "first attempt in good faith to amicably resolve the dispute." To that end, we want to discuss with you Z&Z's plan for the immediate return of the $74,266,755 overpayment of royalties plus statutory interest. Please contact me by November 5th to resolve this matter.

      We look forward to your client's cooperation in amicably resolving this matter.

      Sincerely,

      HOLLAND & KNIGHT LLP

      Nathan T. Paine

cc: Zaragoza & Zembrodt, LLC

---

[4] Current statutory interest rate in Ohio is 8%. *See* Ohio Revised Code § 1343.03(A); *see also* https://tax.ohio.gov/researcher/interest-rates/interest-rates (last accessed on Sept. 29, 2025).